# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **ROKU, INC.**       ) | |
| ) | |
| **Plaintiff,**       ) | |
| ) | **CIVIL ACTION NO.** |
| **v.**       ) | |
| ) | |
| **MULTIMEDIA TECHNOLOGIES PTE.** ) | |
| **LTD.,**       ) | |
| ) | |
| **Defendant.**       ) | |
| ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT
## OF PATENT NON-INFRINGEMENT

Plaintiff Roku, Inc. ("Plaintiff" or "Roku"), an innovative technology device and software company and the U.S. market leader in streaming video distribution, alleges as follows for its Complaint for Declaratory Judgment of Non-Infringement against Defendant Multimedia Technologies Pte. Ltd. ("Defendant" or "MMT").

## INTRODUCTION

1. This is a declaratory judgment action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the patent laws of the United States, 35 U.S.C. § 1 *et seq.* Roku seeks a declaration of non-infringement of U.S. Patent Nos. 9,055,254 (the "'254 Patent"), 9,055,255 (the "'255 Patent"), 9,247,174 (the "'174 Patent"), 9,510,040 (the "'040 Patent"), and 9,820,003 (the "'003 Patent") (collectively, the "Patents-in-Suit").

2. This dispute arises from MMT's campaign to demand license royalties from Roku and companies that sell televisions incorporating the Roku operating system ("Roku OS"). Rather than first suing Roku, MMT approached Roku partner Element TV Company ("Element"), accused Element's Roku televisions of infringing the Patents-in-Suit, demanded that Element enter

into a patent license, and ultimately prompted Element to invoke its contractual indemnification rights against Roku. Element informed Roku that, based on its investigation, the patents identified by MMT appeared to relate to features in the Roku OS and Roku remote functionality and ultimately demanded that Roku assume the defense of MMT's patent assertions pursuant to the parties' distribution agreements. Roku accepted that tender and assumed responsibility for defending Element against MMT's patent allegations.

3.      Having drawn Roku into the dispute through its accusations against Roku televisions, MMT then dealt directly with Roku. MMT acknowledged that Roku would be handling the matter, repeatedly demanded that Roku obtain a license to the Patents-in-Suit, engaged Roku in licensing negotiations concerning all Roku televisions, and ultimately rejected Roku's licensing proposal while continuing to insist that Roku required a license. MMT's conduct has created an immediate and substantial controversy concerning Roku's rights and obligations under the Patents-in-Suit that is ripe for declaratory relief.

4.      This Court is an appropriate forum to resolve that controversy. In enacting 35 U.S.C. § 293, Congress expressly provided that the Eastern District of Virginia shall have jurisdiction over actions affecting patents owned by foreign individuals or entities unless the foreign patent owner has designated with the U.S. Patent and Trademark Office a person residing within the United States on whom may be served process or notice of such proceedings. MMT is a Singapore corporation that owns United States patents but has not designated a domestic agent for service of process. In addition, MMT has purposefully directed its Roku-related licensing and enforcement activities toward this District through its U.S.-based Director of Licensing and Intellectual Property, Brad Close, who resides and works in the Eastern District of Virginia and has participated directly in the licensing campaign giving rise to this action. This Court therefore

2

has both subject matter jurisdiction over this patent controversy and personal jurisdiction over MMT.

5.    MMT's actions have put Roku in the position of either risking prosecution or abandoning that which it claims a right to do.  Unless this Court resolves the parties' dispute, Roku faces the imminent prospect that MMT will continue asserting the Patents-in-Suit against Roku, Element, and other Roku partners while demanding that Roku pay royalties on products that do not infringe any valid patent claim.  Roku therefore seeks a declaration that its products do not infringe the Patents-in-Suit.

**THE PARTIES**

6.    Plaintiff Roku is a Delaware corporation with its principal place of business located at 1173 Coleman Avenue, San Jose, California, 95110.

7.    Roku is a leading technology company that aims to drive innovation and meaningful progress through, among other things, its video streaming technology.  Roku develops and sells streaming devices and televisions that run the Roku OS and also partners with third-party television manufacturers to allow these third parties to sell smart televisions running the Roku OS.

8.    Upon information and belief, Defendant MMT is a corporation organized under the laws of Singapore, having a place of business at 160 Robinson Road, #24-09, SBF Center, Singapore, 068914.

9.    Unlike Roku, MMT has no products of its own.  Its business model is to own and monetize inventions patented by others, extracting licensing fees from asserting and enforcing its patents against innovative product-based companies such as Roku.

10.    MMT is managed by two individuals, Mr. Guy Proulx and Mr. Brad Close.  Mr. Proulx is the managing director and founder of MMT.  Mr. Close is a U.S.-based patent lawyer

who assists Mr. Proulx with the operation of MMT and serves as MMT's Director of Licensing and Intellectual Property.

11.    Upon information and belief, Mr. Proulx and Mr. Close are the only employees of MMT.

12.    Hong Kong Technologies Group, Ltd. ("HKTG") wholly owns MMT.  Mr. Proulx entirely owns HKTG.

13.    Mr. Proulx and Mr. Close continue to license and enforce MMT's patent portfolio, including the Patents-in-Suit.

## JURISDICTION AND VENUE

14.    This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 and under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

15.    This Court has subject matter jurisdiction over the claims alleged in this action at least under 28 U.S.C. §§ 1331, 1338, 2201, and 2202 because district courts have exclusive jurisdiction over declaratory judgment claims arising under the patent laws and a substantial and immediate dispute exists between the parties.

16.    Specifically, this Court can and should provide the relief sought in this Declaratory Judgment Complaint at least because MMT has accused certain Roku products and/or software of infringement, when these products and software do not infringe any claims of the Patents-in-Suit.

17.    As set forth below, MMT's representatives have contacted Roku's in-house counsel and Roku's partners alleging that Roku requires a license to the Patents-in-Suit.

18.    MMT has engaged in a purposeful and ongoing litigation campaign against several of Roku's competitors, including LG Electronics and Vizio, a campaign that underlies Roku's well-founded belief that MMT will next bring suit against Roku and/or its partners.  MMT's actions, as discussed herein, indicate that MMT likely will sue Roku and/or its partners on the

same patents MMT has asserted against Roku's competitors LG Electronics and Vizio and that such suit is imminent. MMT's actions have created a real, live, immediate, and justiciable case or controversy between Roku and MMT.

19.   This Court has personal jurisdiction over MMT under 35 U.S.C. § 293 because MMT is a foreign entity that holds United States patents and has not designated a domestic representative that can accept service on MMT's behalf.

20.   MMT's Director of Licensing and Intellectual Property, Mr. Close, resides and works in this District. Mr. Close regularly operates on behalf of MMT from his personal residence and/or business locations in this District, including litigation, licensing, and prosecution-related activities.

21.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)–(d) with respect to Roku's declaratory judgment claims.

## THE PATENTS-IN-SUIT

22.   The '254 Patent, entitled "On screen method and system for changing television channels," states on its face that it issued on June 9, 2015. A true and correct copy of the '254 Patent is attached as **Exhibit A**.

23.   MMT purports to be the current owner of the '254 Patent.

24.   The '255 Patent, entitled "Live television application on top of live feed," states on its face that it issued on June 9, 2015. A true and correct copy of the '255 Patent is attached as **Exhibit B**.

25.   An Ex Parte Reexamination Certificate for the '255 Patent issued on June 23, 2026, adding additional claims 21 and 22. A true and correct copy of the Ex Parte Reexamination Certificate for the '255 Patent is attached as **Exhibit C**.

26.   MMT purports to be the current owner of the '255 Patent.

5

27. The '174 Patent, entitled "Panel user interface for an intelligent television," states on its face that it issued on January 26, 2016. A true and correct copy of the '174 Patent is attached as **Exhibit D**.

28. MMT purports to be the current owner of the '174 Patent.

29. The '040 Patent, entitled "Global panel," states on its face that it issued on November 29, 2016. A true and correct copy of the '040 Patent is attached as **Exhibit E**.

30. MMT purports to be the current owner of the '040 Patent.

31. The '003 Patent, entitled "Application panel manager," states on its face that it issued on November 14, 2017. A true and correct copy of the '003 Patent is attached as **Exhibit F**.

32. MMT purports to be the current owner of the '003 Patent.

## MMT'S HISTORY OF LITIGATING AND LICENSING THE PATENTS-IN-SUIT

33. MMT has previously accused LG Electronics of infringing all the Patents-in-Suit. The court severed the case into two actions: *Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc.*, No. 2:22-cv-00494 (E.D. Tex., Dec. 23, 2022) ("LG Action I") and *Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc.*, No. 2:25-cv-00021 (E.D. Tex., Jan. 10, 2025) ("LG Action II").

34. LG Action I went to trial in May 2025. The jury found all asserted claims of the asserted patents—the '174 Patent, the '254 Patent, the '040 Patent, and the '255 Patent—invalid and not infringed.[1] *See* LG Action I, Dkt. 295 (Verdict Form). MMT has appealed this verdict to the Federal Circuit, and its appeal is currently pending.

---

[1] The claims found not infringed and invalid include claim 8 of the '254 Patent; claim 19 of the '255 Patent; claims 10 and 11 of the '174 Patent; and claim 21 of the '040 Patent.

6

35.     LG Action II is currently pending in the Eastern District of Texas and jury selection is scheduled for November 1, 2027.  In this action, MMT has alleged that LG Electronics infringes the '003 Patent (among others).

36.     MMT has also previously accused Vizio of infringing the '255 Patent, the '174 Patent, and the '040 Patent.  *See Multimedia Techs. Pte. Ltd. v. Vizio, Inc.*, No. 2:25-cv-00577 (C.D. Cal., complaint filed Mar. 24, 2023) (the "Vizio Action").

37.     On January 6, 2026, the court dismissed the Vizio Action pursuant to a settlement agreement between MMT and Vizio.

38.     While LG Action I and the Vizio Action were ongoing, LG Electronics and Vizio jointly filed *inter partes* review ("IPR") proceedings for the '254 Patent (IPR2024-00353), the '174 Patent (IPR2024-00352), and the '040 Patent (IPR2024-00351).

39.     On May 19, 2025, the PTAB issued its Final Written Decision in IPR2024-00351 concluding that LG Electronics demonstrated by a preponderance of the evidence that claims 1, 4-6, 11, 14-16, 21, and 22 of the '040 Patent are unpatentable.  MMT appealed that decision to the Federal Circuit, but subsequently moved to dismiss its appeal.  The Federal Circuit dismissed the appeal on January 9, 2026.  On March 10, 2026, the USPTO issued an Inter Partes Review Certificate cancelling claims 1, 4-6, 11, 14-16, 21, and 22.

40.     On April 29, 2025, the PTAB issued its Final Written Decision in IPR2024-00352 finding none of the challenged claims of the '174 Patent unpatentable.  LG Electronics has appealed that decision to the Federal Circuit, where its appeal is pending.

41.     On May 12, 2025, the PTAB issued its Final Written Decision in IPR2024-00353 concluding that LG Electronics demonstrated by a preponderance of the evidence that claims 1-4,

6, 8-10, 12-17, and 19 of the '254 Patent are unpatentable.  MMT has appealed that decision to the Federal Circuit, where its appeal is pending.

42.    MMT has previously attempted to license its patent portfolio and has licensed the Patents-in-Suit to at least Samsung Electronics and Apple, Inc.  *See* LG Action I, Dkt. 318 (Trial Transcript) at 1254.

43.    Upon information and belief, MMT has licensed the Patents-in-Suit to Vizio as a result of the settlement in the Vizio Action.

44.    MMT's consistent and ongoing strategy of engaging in licensing campaigns and filing lawsuits against Roku's competitors, along with the communications it has made concerning Roku's products and software, demonstrate that MMT intends to imminently assert its patents against Roku and/or its partners.

## MMT'S INFRINGEMENT ASSERTIONS CONCERNING ROKU'S PRODUCTS AND TECHNOLOGY

45.    One of Roku's television partners is Element, a private company specializing in the sale of affordable televisions, monitors, soundbars, and a diverse range of appliances.

46.    On February 5, 2026, MMT, through its in-house counsel, contacted Element and asked Element to enter into a license for use of certain MMT patents.  MMT also informed Element that it had drafted infringement claim charts for at least four of the Patents-in-Suit: the '003 Patent, the '040 Patent, the '255 Patent, and the '174 Patent.

47.    On or about April 15, 2026, Element and Roku had a discussion concerning MMT's allegations.  Element explained to Roku that MMT had contacted Element alleging that the Element TVs infringe based on their operating system, *i.e.*, the Roku OS, and informed Roku that many or most of the claims MMT had identified appear to be applicable to the Roku OS.

8

48. On April 22, 2026, MMT, through its in-house counsel, sent Element a proposed license agreement for certain MMT patents, including the Patents-in-Suit.

49. On May 22, 2026, as a result of its communications with MMT, Element requested that, pursuant to the terms of a license agreement, Roku agree to indemnify and defend Element with respect to MMT's infringement claims. Roku agreed to that request.

50. On June 11, 2026, Roku, through its in-house counsel, contacted MMT to inform it that Roku will be handling MMT's patent assertion against Element.

51. On June 11, 2026, MMT acknowledged that Roku would be handling the matter and proposed a time for an introductory call. MMT requested that Roku send an offer for a license prior to the call.

52. MMT and Roku subsequently discussed a potential license agreement that would cover all televisions running the Roku OS.

53. In June 2026, while both MMT's Director of Licensing and Intellectual Property, Mr. Close, and Roku's in-house counsel were attending an in-person conference in San Diego, Mr. Close and Roku's in-house counsel met to further discuss a possible license agreement for MMT's patent portfolio, including the Patents-in-Suit.

54. On June 19, 2026, Roku's in-house counsel emailed Mr. Close to memorialize their conversations at the conference in San Diego. Mr. Close continued to press for a license agreement between MMT and Roku that would cover all Roku OS television products.

55. On July 13, 2026, Mr. Close and Roku's in-house counsel had a telephonic conversation in which MMT continued its license demands and in which Roku reiterated that it does not infringe the Patents-in-Suit.

9

56.    In an effort to avoid litigation, on July 27, 2026, Roku made an offer for a license to MMT's portfolio, including the Patents-in-Suit.  MMT rejected that offer.

57.    Upon information and belief, in addition to the licensing demands MMT sent to Element and Roku, MMT has sent licensing demands and/or infringement assertions concerning one or more of the Patents-in-Suit to other Roku partners.

58.    Based on MMT's communications with both Element and Roku and MMT's enforcement and/or licensing actions against related entities in the television market (*i.e.*, LG Electronics, Vizio, and Samsung), Roku has a well-formed and reasonable expectation that MMT will assert the Patents-in-Suit against it and/or assert the Patents-in-Suit against Element or other Roku partners based on software provided by Roku.

59.    MMT's infringement allegations relating to the Patents-in-Suit implicate functionality provided by Roku, and Roku and MMT have a genuine and immediate case and controversy regarding the non-infringement of the Patents-in-Suit by Roku's products.

## COUNT I

### (Declaratory Judgment of Non-infringement of the '254 Patent)

60.    Roku hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.    Roku has not infringed and does not infringe any claim of the '254 Patent, directly or indirectly, either literally or under the doctrine of equivalents.

62.    The '254 Patent has three independent claims (*i.e.*, claims 1, 8, and 14).  Exemplary claim 8 is reproduced below:

8. A television, comprising:

a television screen;

10

at least one of an infrared and radio frequency module configured to receive wirelessly requests from a remote control of a user, the requests comprising a selected channel or program from a displayed listing; and

a microprocessor executable application framework configured to:

receive a request to change a programming channel, display, on the television screen, an on screen channel changer, the on screen channel changer comprising electronic program guide ("EPG") information and a number input bar comprising digits, wherein the digits range from 0 to 9,

receive, from the remote control and using the on screen channel changer, a channel selection of a user based on digits in the number input bar, wherein the user selects the digits from the number input bar using non-numeric keys on the remote control, and

change to the selected channel, wherein the remote control comprises:

a media center button that, when selected, provides, by the television screen, displayed information regarding one or more of groupings of music, groupings of videos, groupings of photographs, internal computational devices, and external computational devices, the computational devices comprising one or more of personal computers, laptops, tablet computers, wireless phones, and removable computer readable media;

an application center button that, when selected, provides, by the television screen, displayed information regarding pre-installed and downloaded software applications, wherein the downloaded software applications comprise one or more of a web browser, settings control, and content search algorithms;

11

an application panel button that, when selected, displays, by the television screen, an application panel, wherein the application panel comprises an information panel regarding a selected application icon; and

a global panel button that, when selected, provides the user, via one or more panels or windows displayed by the television screen, with access to one or more of silos, notifications, a web browser, system settings, and information associated therewith.

63.     Independent claims 1 and 14 recite similar limitations.

64.     None of the Roku OS or Roku remote functionalities meets each and every limitation of the independent claims, either literally or by equivalents. As one non-limiting example, the Roku OS and Roku remote do not have "an application panel button that, when selected, displays, by the television screen, an application panel, wherein the application panel comprises an information panel regarding a selected application icon." To the contrary, when the application panel button is selected the application is launched. No information panel is displayed regarding the application icon.

65.     The dependent claims of the '254 Patent necessarily incorporate and add additional limitations to the independent claims and are therefore not infringed if the independent claims are not infringed.

66.     For at least these reasons, the Roku OS and remote functionalities do not directly or indirectly infringe any claim of the '254 Patent, literally or under the doctrine of equivalents.

67.     Roku seeks a declaration that it does not infringe any claim of the '254 Patent.

## COUNT II

### (Declaratory Judgment of Non-infringement of the '255 Patent)

68.     Roku hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     Roku has not infringed and does not infringe any claim of the '255 Patent, directly or indirectly, either literally or under the doctrine of equivalents.

70.     The '255 Patent has five independent claims (*i.e.*, claims 1, 10, 19, 21, and 22). Exemplary claims 19 and 20 are reproduced below:

19. A machine, comprising:

an intelligent television (TV) having a display and a tuner, wherein the tuner is configured to receive and convert broadcast content signals to be displayed by the display;

an input device associated with the intelligent TV;

a memory; and

a microprocessor operable to:

run a live TV application, wherein the live TV application is configured to control one or more interactive user functions of the intelligent TV;

present, substantially simultaneously via the display of the intelligent TV, live TV broadcast content, wherein the live TV broadcast content is presented to a first portion of the display, wherein the first portion of the display includes substantially an entire area of a screen of the TV;

receive a live TV application input at the intelligent TV;

determine, in response to receiving the live TV application input, a live TV application feature to present via the display, wherein the one or more interactive

13

user functions of the intelligent TV are controlled via the live TV application feature;

present, via the display, the live TV application feature to a second portion of the display, wherein the second portion of the display overlaps at least a portion of the first portion of the display, wherein the second portion of the display includes less than the entire area of the screen of the TV, and wherein at least part of the second portion of the display is either transparent or translucent;

receive a global panel input at the intelligent TV;

determine, by the processor and in response to receiving the global panel input, a global panel feature to present via the display, wherein the one or more interactive user functions of the intelligent TV are controlled via the global panel feature; and

present, via the display, the global panel feature to a third portion of the display, wherein the third portion of the display overlaps at least a portion of the first portion of the display, wherein the third portion of the display includes less than the entire area of the screen of the TV, wherein at least part of the third portion of the display is either transparent or translucent, and wherein a first location of the third portion of the display is different from a second location of the second portion of the display.

20. The system of claim 19, wherein live TV application input is provided by a user via the input device associated with the intelligent TV.

71.     Independent claims 1 and 10 (which were original to the '255 Patent) and independent claims 21 and 22 (which were added in the June 23, 2026, Ex Parte Reexamination Certificate) recite similar limitations.

14

72.    None of the Roku OS or Roku remote functionalities meets each and every limitation of independent claims 1, 10, 19, 21, or 22, literally or by equivalents.  As one example, the Roku OS does not "present, via the display, the live TV application feature to a second portion of the display, wherein the second portion of the display overlaps at least a portion of the first portion of the display, wherein the second portion of the display includes less than the entire area of the screen of the TV, and wherein at least part of the second portion of the display is either transparent or translucent."

73.    As another example, the Roku OS does not "present, via the display, the global panel feature to a third portion of the display, wherein the third portion of the display overlaps at least a portion of the first portion of the display, wherein the third portion of the display includes less than the entire area of the screen of the TV, wherein at least part of the third portion of the display is either transparent or translucent, and wherein a first location of the third portion of the display is different from a second location of the second portion of the display."

74.    None of the Roku OS or Roku remote functionalities meets each and every limitation of dependent claim 20 literally or by equivalents.  In addition to failing to meet each and every limitation of claim 19, the Roku remote does not have a "live TV application input."  *See* https://image.roku.com/c3VwcG9ydC1B/Roku-TV-User-Guide-10-0-en-US-.pdf.

75.    The dependent claims of the '255 Patent necessarily incorporate and add additional limitations to the independent claims and are therefore not infringed if the independent claims are not infringed.

76.    For at least these reasons, the Roku OS and remote functionalities do not directly or indirectly infringe any claim of the '255 Patent, literally or under the doctrine of equivalents.

77.    Roku seeks a declaration that it does not infringe any claim of the '255 Patent.

15

## COUNT III

### (Declaratory Judgment of Non-infringement of the '174 Patent)

78.    Roku hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.    Roku has not infringed and does not infringe any claim of the '174 Patent, directly or indirectly, either literally or under the doctrine of equivalents.

80.    The '174 Patent has two independent claims (*i.e.*, claims 1 and 10).  Exemplary claim 1 is reproduced below:

1. A method for displaying content on a television, comprising:

receiving a first input via an input device associated with the television;

in response to the first input, displaying, via the television, an application panel interface;

determining content currently being shown on the television;

identifying at least one of a content source and content information associated with the content currently being displayed via the television;

based on the content and the at least one of the content source and the content information, providing a first content panel in the application panel interface, wherein the first content panel is a first type of application panel;

receiving a first directional input via the input device associated with the television;

determining, based on a first direction associated with the first directional input, a second content panel to display via the television in the application panel interface, wherein the second content panel is a second type of application panel;

16

retrieving, from memory, a second content information based on the second type

of content panel; and

displaying, via the television, the second content information in the second

content panel.

81.    Claim 10 recites similar limitations.

82.    None of the Roku OS or Roku remote functionalities meets each and every limitation of independent claims 1 or 10, either literally or by equivalents.  As one non-limiting example, the Roku OS does not "determin[e], based on a first direction associated with the first directional input, a second content panel to display via the television in the application panel interface" because the Roku OS does not display a second content panel (*i.e.*, the "Picture settings" menu) in response to a directional input.  *See* https://image.roku.com/c3VwcG9ydC1B/Roku-TV-User-Guide-10-0-en-US-.pdf (showing directional input on remote control can prompt the television to display a channel guide or favorite channels list).

83.    The dependent claims of the '174 Patent necessarily incorporate and add additional limitations to the independent claims and are therefore not infringed if the independent claims are not infringed.

84.    For at least this reason, the Roku OS and remote functionalities do not directly or indirectly infringe any claim of the '174 Patent, either literally or under the doctrine of equivalents.

85.    Roku seeks a declaration that it does not infringe any claim of the '174 Patent.

## COUNT IV

### (Declaratory Judgment of Non-infringement of the '040 Patent)

86.    Roku hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 85 of this Complaint as if fully set forth herein.

17

87. Roku has not infringed and does not infringe any claim of the '040 Patent, directly or indirectly, either literally or under the doctrine of equivalents.[2]

88. The '040 Patent has three independent claims (*i.e.*, claims 1, 11, and 21). Exemplary claims 1, 2, and 3 are reproduced below:

1. A method of displaying content on a television, comprising:

receiving, by a processor, an indication associated with a selection by a user;

determining, by the processor, based on the received indication, a global panel to display via the television;

retrieving, by the processor, from memory, a first content information for display in the global panel; and

displaying, via the television, the retrieved content information in the global panel, wherein the global panel includes a list of sources of content for the intelligent television, wherein at least one of the sources is highlighted as being associated with the first content information, and wherein the sources include a live television source, a video on demand source, a media center source, an applications source, and an electrical input associated with the television.

2. The method of claim 1, further comprising:

identifying a user associated with the received indication;

retrieving one or more settings associated with the identified user;

retrieving, from memory, content information associated with the identified user; and

---

[2] As noted above, the USPTO has issued a certificate cancelling claims 1, 4-6, 11, 14-16, 21, and 22. As such, these claims cannot be infringed by Roku, but dependent claims 2, 3, 7-10, 12, 13, and 17-20 have not been cancelled and remain a part of the '040 Patent.

displaying, via the television, the retrieved content information in the global panel.

3. The method of claim 1, further comprising:

identifying a user associated with the received indication;

retrieving, from memory, one or more settings associated with the identified user;

retrieving, from memory, content information associated with the identified user and the one or more settings associated with the user; and

displaying, via the television, the retrieved content information in the global panel.

89.    Independent claims 11 and 21 recite similar limitations to claim 1.

90.    None of the Roku OS or Roku remote functionalities meets each and every limitation of independent claims 1, 11, or 21, either literally or by equivalents.  As one non-limiting example, the Roku OS and Roku remote do not have a "global panel, . . . wherein the sources include a live television source, a video on demand source, a media center source, an applications source, and an electrical input associated with the television" because there is no "media center source" as defined in the patent.  According to the '040 Patent specification, the media center source "can provide for displaying pictures or audio that is different from, but still accessible by the user and different from live TV or video on demand."  This is not present in the Roku OS.

91.    Moreover, none of the Roku OS or Roku remote functionalities meets each and every limitation of dependent claim 2, either literally or by equivalents.  In addition to failing to meet each and every limitation of claim 1, the Roku OS and Roku remote do not "retriev[e], from

19

memory, content information associated with the user" or "display[], via the television, the retrieved content information in the global panel."

92.     Finally, none of the Roku OS or Roku remote functionalities meets each and every limitation of dependent claim 3, either literally or by equivalents.  In addition to failing to meet each and every limitation of claim 1, the Roku OS and Roku remote do not "retriev[e], from memory, content information associated with the identified user and the one or more settings associated with the user."

93.     The dependent claims of the '040 Patent necessarily incorporate and add additional limitations to the independent claims and are therefore not infringed if the independent claims are not infringed.

94.     For at least these reasons, the Roku OS and remote functionalities do not directly or indirectly infringe any asserted claim of the '040 Patent, literally or under the doctrine of equivalents.

95.     Roku seeks a declaration that it does not infringe any claim of the '040 Patent.

**COUNT V**

**(Declaratory Judgment of Non-infringement of the '003 Patent)**

96.     Roku hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97.     Roku has not infringed and does not infringe any claim of the '003 Patent, directly or indirectly, either literally or under the doctrine of equivalents.

98.     The '003 Patent has three independent claims (*i.e.*, claims 1, 9, and 17).  Exemplary claims 9, 10, 12, 13, and 16 are reproduced below:

9. A system to manage an application panel on an intelligent television (TV) comprising:

a hardware processor adapted to detect a request to invoke the application panel based on a selection of an application panel button on a remote associated with the intelligent TV;

a hardware memory, in communication with the hardware processor, the hardware memory adapted to store a panel controller adapted to detect the displayed content on the intelligent TV, the panel controller further adapted to determine, based on the detected displayed content, a type of content being displayed, wherein the type of content is at least one of an application and a video on demand, the panel controller further adapted to detect context information, wherein the context information is based at least on the determined type of displayed content and a location of the application panel, wherein the location is along at least one edge of the display, wherein the application panel is associated with a silo, wherein the silo is at least one of a Live TV silo, an on-demand silo, a media center silo, and an applications silo;

the hardware memory adapted to store a silo application adapted to determine an information to display in the application panel based on both of the displayed content on the intelligent TV and the context information, wherein the determined information includes one or more of an information portion, a new portion, a recommendation portion, a genre portion, an electronic program guide, a category portion, a favorites portion and a search portion; and

a display controller adapted to display live TV content and the determined information in the application panel on a display of the intelligent TV.

21

10. The system of claim 9, wherein the application panel hovers above background content and is partially transparent.

12. The system of claim 10, wherein the background content is Live TV, on demand content, media center content, applications or content from other inputs.

13. The system of claim 12, wherein the application panel is dynamically updated based on the background content.

16. The system of claim 9, wherein the application panel includes executable portions.

99.     Independent claims 1 and 17 recite similar limitations to claim 9.

100.    None of the Roku OS or Roku remote functionalities meets each and every limitation of independent claims 1, 9, or 17, either literally or by equivalents.  As one example, the Roku OS and remote are not "adapted to store a panel controller adapted to detect the displayed content on the intelligent TV, the panel controller further adapted to determine, based on the detected displayed content, a type of content being displayed."  Any alleged "application panel" is merely a pre-programmed electronic program guide that does not change based on the detection of content and context information any more than a standard pre-programmed TV guide and which has been done in the art long before the '003 Patent.

101.    As another example, the Roku OS and Roku remote are not "adapted to store a silo application adapted to determine an information to display in the application panel based on both of the displayed content on the intelligent TV and the context information, wherein the determined information includes one or more of an information portion, a new portion, a recommendation

22

portion, a genre portion, an electronic program guide, a category portion, a favorites portion and a search portion."

102. None of the Roku OS or Roku remote functionalities meets each and every limitation of dependent claim 10, either literally or by equivalents. In addition to failing to meet each and every limitation of claim 9, the Roku OS and Roku remote do not have an application panel that "hovers above background content and is partially transparent." The Roku OS application panel is fully opaque.

103. None of the Roku OS or Roku remote functionalities meets each and every limitation of dependent claim 12, either literally or by equivalents, because the Roku OS and Roku remote functionalities fail to meet each and every limitation of claims 9 and 10.

104. None of the Roku OS or Roku remote functionalities meets each and every limitation of dependent claim 13, either literally or by equivalents, because the Roku OS and Roku remote functionalities fail to meet each and every limitation of claims 9 and 10.

105. None of the Roku OS or Roku remote functionalities meets each and every limitation of dependent claim 16, either literally or by equivalents, because the Roku OS and Roku remote functionalities fail to meet each and every limitation of claim 9.

106. The dependent claims of the '003 Patent necessarily incorporate and add additional limitations to the independent claims and are therefore not infringed if the independent claims are not infringed.

107. For at least these reasons, the Roku OS and remote functionalities do not directly or indirectly infringe any claim of the '003 Patent, literally or under the doctrine of equivalents.

108. Roku seeks a declaration that it does not infringe any claim of the '003 Patent.

23

## **PRAYER FOR RELIEF**

WHEREFORE, Roku prays for judgment against Defendant MMT, and respectfully requests the following relief:

A.      A judgment that Roku does not directly or indirectly infringe any claim of the '254 Patent, literally or under the doctrine of equivalents;

B.      A judgment that Roku does not directly or indirectly infringe any claim of the '255 Patent, literally or under the doctrine of equivalents;

C.      A judgment that Roku does not directly or indirectly infringe any claim of the '174 Patent, literally or under the doctrine of equivalents;

D.      A judgment that Roku does not directly or indirectly infringe any claim of the '040 Patent, literally or under the doctrine of equivalents;

E.      A judgment that Roku does not directly or indirectly infringe any claim of the '003 Patent, literally or under the doctrine of equivalents;

F.      A judgment that this is an exceptional case and that Roku be awarded its attorneys' fees, costs, and expenses incurred in this action pursuant to 35 U.S.C. § 285;

G.      Such other and further relief as the Court deems just and appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Roku demands a jury trial on all issues and claims so triable.

Dated: July 29, 2026

Respectfully submitted:

*/s/ Stephen E. Noona*
Stephen E. Noona (VSB No. 25367)
**Kaufman & Canoles, P.C.**
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  (757) 624-3239
Facsimile:  (888) 369-9092
Email:  Stephen.noona@kaufcan.com

Natalie A. Bennett (*pro hac vice* to be filed)
Matthew J. Rizzolo (*pro hac vice* to be filed)
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Ave, N.W.
Washington, DC  20004-2541
Telephone:  (202) 739-3000
Facsimile:  (202) 739-3001
Email:  natalie.bennett@morganlewis.com
Email:  matthew.rizzolo@morganlewis.com

Jason C. White (*pro hac vice* to be filed)
Nicholas A. Restauri (*pro hac vice* to be filed)
**Morgan, Lewis & Bockius LLP**
110 North Wacker Drive
Chicago, IL  60606-1511
Telephone:  (312) 324-1000
Facsimile:  (312) 324-1001
Email: jason.white@morganlewis.com
Email: nicholas.restauri@morganlewis.com

*Counsel for Roku, Inc.*

32251259v1